NB:JRS
F. #2023R00365

FILED
CLERK

February 6, 2024

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

LEVAR JACKSON and
JACLYN MISURACA,

            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

C O M P L A I N T

(21 U.S.C. §§ 841(b)(1)(B)(vi) and 846)

No. 24-MJ- 00112 (JMW)

EASTERN DISTRICT OF NEW YORK, SS:

        BRIAN MANSFIELD, being duly sworn, deposes and states that he is a Special Agent with the Drug Enforcement Administration, duly appointed according to law and acting as such.

        In or about and between May 2023 and January 2024, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants LEVAR JACKSON and JACLYN MISURACA, together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute one or more controlled substances, which offense involved a substance containing N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II controlled substance, contrary to Title 21, United States Code, Section 841(a)(1).   The amount of fentanyl involved in

the conspiracy attributable to the defendants as a result of their own conduct, and the conduct of other conspirators reasonably foreseeable to them, was 40 grams or more of a substance containing fentanyl.

(Title 21, United States Code, Sections 846 and 841(b)(1)(B)(vi); Title 18, United States Code, Sections 3551 et seq.)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I am a Special Agent with the Drug Enforcement Administration (the "DEA"), and have been so employed for over eighteen years. As a Special Agent for the DEA, I have participated in investigations into allegations of the unlawful possession, distribution, and manufacture of controlled substances, unlawful trafficking of controlled substances, and money laundering, among other criminal activity.

2. In or about and between May 2023 and January 2024, the defendants LEVAR JACKSON ("JACKSON") and JACLYN MISURACA ("MISURACA") sold fentanyl multiple times in transactions involving undercover law enforcement officers ("UCs") with the Suffolk County Police Department. Over the course of at least 11 controlled buys, JACKSON and MISURACA's conspiracy sold approximately 270 grams of fentanyl. Several of these fentanyl sales are described in additional detail below.

3. On or about August 23, 2023, a UC made an agreement with JACKSON by telephone to purchase fentanyl. JACKSON directed the UC to a residential location in Hempstead, New York to effectuate the fentanyl transaction. Shortly after the UC's arrival that

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

evening, JACKSON arrived by car at approximately 5:22 p.m. JACKSON exited the car, entered a residence, and exited the residence. JACKSON then retrieved a cardboard box from the trunk of the vehicle. JACKSON placed a clear knotted plastic bag containing a white powder substance into the cardboard box. The UC paid JACKSON $800 in exchange for the cardboard box. Subsequent testing indicated that the plastic bag inside of the cardboard box contained approximately 19.5019 grams of fentanyl.

4. On or about October 19, 2023, a UC made an agreement with JACKSON by telephone to purchase fentanyl. JACKSON directed the UC to a nursing home located in Commack, New York to effectuate the fentanyl transaction. Upon the UC's arrival at the nursing home that afternoon, the UC called JACKSON to inform him of the UC's arrival. At approximately 3:56 p.m., MISURACA approached the UC and directed the UC to her vehicle, which was parked in the nursing home parking lot. MISURACA then removed from her vehicle a white napkin that contained a clear knotted plastic bag with an off-white compressed powder substance inside. The UC paid MISURACA $800 in exchange for the napkin. Subsequent testing indicated that the plastic bag contained approximately 19.3725 grams of fentanyl that had been mixed with xylazine.

5. On or about January 10, 2024, a UC made an agreement with JACKSON by telephone to purchase fentanyl. JACKSON directed the UC to a shopping center parking lot located in East Northport, New York to effectuate the fentanyl transaction. Upon the UC's arrival at the shopping center parking lot, the UC exchanged text messages with JACKSON. At approximately 7:59 p.m., MISURACA arrived at the shopping center parking lot and handed the UC a small box containing a clear plastic bag filled with a white compressed powdered

substance.  The UC paid MISURACA $1,200.  Subsequent testing indicated that the plastic bag contained approximately 27.6751 grams of fentanyl that had been mixed with xylazine.

6. Based on the foregoing facts, I submit that there is probable cause that the defendants LEVAR JACKSON and JACLYN MISURACA committed violations of 21 U.S.C. §§ 841(b)(1)(B)(vi) and 846.

WHEREFORE, your deponent respectfully requests that the defendants LEVAR JACKSON and JACLYN MISURACA be dealt with according to law.

Respectfully submitted,

_____
Brian Mansfield
Special Agent
Drug Enforcement Administration

Sworn to before me this
__6th__ day of February, 2024   @ 5:15pm

/S/   *James M. Wicks*
_____
HONORABLE JAMES M. WICKS
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK



4